UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS C. SHELTON and
MARA G. SHELTON,

    Plaintiffs,

v.                                    Case No. 8:12-cv-2064-T-30AEP

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment (Dkt. 14) and Plaintiffs' Response in opposition (Dkt. 21). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## INTRODUCTION

This is an action for damages arising out of an insurance policy Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") issued to Plaintiffs Thomas and Mara Shelton. Mr. and Mrs. Shelton contend that their property suffered damages consistent with sinkhole activity; a covered cause of loss. The issue before the Court on Liberty Mutual's summary judgment motion is whether the Court should apply the statutory definition of "structural damage" contained in Fla. Stat. § 627.706(2)(k)(2011) to the term "structural damage," as it is used in the subject policy. The Court concludes that Liberty Mutual's

summary judgment motion should be denied because "structural damage" should be given its plain meaning as "damage to the structure" (as this Court and other trial courts have found).

## BACKGROUND

At all material times, Mr. and Mrs. Shelton owned the property located at 1907 Sheffield Court, Oldsmar, Florida (the "subject property"). Liberty Mutual insured the subject property under policy number H32-251-478050-1017 (the "subject policy"), with effective dates of July 18, 2011 through July 18, 2012. The subject policy provides coverage for Sinkhole Loss as follows:

**SECTION 1 - PERILS INSURED AGAINST**

The following perils are added:

**Sinkhole Loss**

a.  Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

(1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.

b.  Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

The SECTION I - Earth Movement exclusion does not apply to this peril.

(Dkt. 14-1).

On January 5, 2012, Mr. and Mrs. Shelton made a claim for sinkhole loss with Liberty Mutual for damage to the subject property that they allege was discovered on October 5, 2011. Liberty Mutual retained an engineer to conduct an evaluation of the subject property in order to determine whether structural damage existed at the subject property. After performing various testing at the subject property, Liberty Mutual's expert, SDII Global Corporation ("SDII"), opined that the subject property did not exhibit structural damage as defined by Fla. Stat. § 627.706(2)(k).

Liberty Mutual denied coverage for the subject damage based on SDII's findings. Mr. and Mrs. Shelton then filed the instant suit against Liberty Mutual under the subject policy for the damages to the subject property. In its answer to the complaint, Liberty Mutual included an affirmative defense asserting that the 2011 amendments to Chapter 627 of the Florida Statutes apply to Mr. and Mrs. Shelton's claim because the date of loss implicates an insurance policy incepted after May 17, 2011. Liberty Mutual argues that, as a matter of law, the five-part definition of "structural damage" contained within section 627.706(2)(k)(2011) directs how the subject policy term "structural damage" is defined.

Notably, the subject policy does not define the term "structural damage." Moreover, the subject policy does not purport to incorporate by reference any existing statutory definitions.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*

*Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Liberty Mutual urges the Court to apply the statutory definition of "structural damage" delineated in Fla. Stat. § 627.706(2)(k)(2011) to the subject policy. This request ignores numerous court decisions, including prior decisions of *this Court*, that hold that the term "structural damage" has a plain meaning of "damage to the structure." It is important to note that the outcome of this case does not change based on the fact that, unlike the prior cases on this issue, the 2011 amendments were in effect *before* the inception of the subject policy; this is because it is inappropriate to look to other definitions outside the insurance policy if the Court can apply a plain meaning to the undefined phrase. *See Royal Ins. Co. v. Latin American Aviation Services, Inc.*, 210 F.3d 1348, 1351 (11th Cir. 2000) (noting that "Courts are not free to rewrite an insurance policy or to add terms or meaning to it."); *see also Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So. 2d 739, 741-42 (Fla. 5th DCA 2003) ("When determining the meaning and scope of an exclusion clause or other provisions of an insurance policy, legal niceties, technical terms, and phraseology extracted from the vernacular of the insurance industry should never transcend the common understanding of the ordinary person.

Therefore, the proper inquiry is not whether a legal scholar can, with learned deliberation, comprehend the meaning of an insurance policy provision, but instead, whether it is understandable to a layperson").

Notably, Liberty Mutual did not insert the statutory language of section 627.706(2)(k)(2011) in the subject policy.  Liberty Mutual also did not reference section 627.706(2)(k)(2011) in the subject policy (or otherwise define the phrase "structural damage").  And a term contained in an insurance policy is not considered ambiguous because the term is not defined in the policy.  Florida law is clear that the court should construe the undefined word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. *See Pacific Employers Ins. Co. v. Wausau Business Ins. Co.*, 508 F. Supp. 2d 1167, 1176 (M.D. Fla. 2007); *see also Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993) (noting that "[t]he insurer cannot, by failing to define the terms . . . or to include any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided.").

With respect to the undefined phrase "structural damage," numerous Florida trial courts and courts within this district, including this Court, have already held that the phrase should be read according to its plain meaning.  For example, in *Ayres v. USAA Casualty Insurance Company*, 2012 WL 1094321 (M.D. Fla. April 2, 2012), the Honorable Susan C. Bucklew held that the phrase "structural damage" is defined as "damage to the structure." *Id.* at *3-*4.  This Court made the same finding in *Zawadzki v. Liberty Mut. Fire Ins. Co.*, 8:12-cv-950-T-30MAP, *Leon v. First Liberty Ins. Corp.*, 8:12-cv-1613-T-30MAP, and

*Garcia v. First Liberty Ins. Corp*, 8:12-cv-771-T-30TGW.  The Court sees no reason to depart from these rulings.[1]

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment (Dkt. 14) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on April 17, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-2064.msj14.frm

---

[1] Notably, Liberty Mutual's motion ignores bedrock Florida insurance law that an insurer may provide more coverage than is statutorily required.  *See Gonzalez v. Cooperative De Seguros Multiples De Puerto Rico, Inc.*, 2009 WL 3781492, at *5 (M.D. Fla. Nov. 10, 2009) (citing *Green v. Life & Health of Am.*, 704 So. 2d 1386 (Fla. 1998)).