UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS C. SHELTON and
MARA G. SHELTON,

    Plaintiffs,

v.                                          Case No.  8:12-cv-2064-T-30AEP

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Summary Judgment (Dkt. 26) and Defendant's Response in opposition (Dkt. 37). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted.

## BACKGROUND

This is an action for damages arising out of an insurance policy Defendant Liberty Mutual Fire Insurance Company issued to Plaintiffs Thomas and Mara Shelton. Mr. and Mrs. Shelton contend that their property suffered damages consistent with sinkhole activity, a covered cause of loss.

At all material times, Mr. and Mrs. Shelton owned the property located at 1907 Sheffield Court, Oldsmar, Florida (the "subject property"). Liberty Mutual insured the

subject property under policy number H32-251-478050-1017 (the "subject policy"), with effective dates of July 18, 2011 through July 18, 2012. The subject policy provides coverage for Sinkhole Loss as follows:

> **SECTION 1 - PERILS INSURED AGAINST**
>
> The following perils are added:
>
> **Sinkhole Loss**
>
> a.  Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.
>
> (1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.
>
> b.  Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.
>
> The SECTION I - Earth Movement exclusion does not apply to this peril.

(Dkt. 14-1).

On January 5, 2012, Mr. and Mrs. Shelton made a claim for sinkhole loss with Liberty Mutual for damage to the subject property that they allege was discovered on October 5, 2011. In response, Liberty Mutual retained an engineer to conduct an evaluation of the subject property in order to determine whether structural damage existed at the subject property. After performing various testing at the subject property, Liberty Mutual's expert,

SDII Global Corporation ("SDII"), opined that the subject property did not exhibit structural damage as defined by Fla. Stat. § 627.706(2)(k).

Liberty Mutual denied coverage for the subject damage based on SDII's findings. Mr. and Mrs. Shelton then filed the instant suit against Liberty Mutual under the subject policy for the damages to the subject property. In its answer to the complaint, Liberty Mutual included an affirmative defense asserting that the 2011 amendments to Chapter 627 of the Florida Statutes applied to Mr. and Mrs. Shelton's claim because the date of loss implicated an insurance policy incepted after May 17, 2011.

On November 29, 2012, Liberty Mutual filed a motion for summary judgment and argued that, as a matter of law, the five-part definition of "structural damage" contained within section 627.706(2)(k)(2011) applied to the subject policy term "structural damage" (Dkt. 14). The Court disagreed and ruled that the subject policy term "structural damage" should be given its plain meaning as "damage to the structure" (Dkt. 23).

Mr. and Mrs. Shelton now move for summary judgment. They argue that the record is undisputed that the structural damage to the subject property is the result of sinkhole activity. The record reflects that Mr. and Mrs. Shelton engaged the services of Florida Testing and Environmental, Inc. ("FTE") to conduct a geotechnical investigation and determine the cause of damage to the subject property. FTE issued a report dated September 18, 2012, that concluded "damage to the subject Shelton Residence is caused by the sinkhole activity. In my professional judgment, the totality of scientific data (collected by SDII & FTE) evaluated to render an opinion is sufficient to conclude sinkhole activity as the primary

cause of distress/damage within a reasonable professional probability." (Gulati Aff., Ex. B at p.4).

Sonny Gulati, P.E. of FTE further concluded that grouting and underpinning was necessary to remediate the subsurface conditions at the subject property and stabilize and repair the foundation and structure. Mr. and Mrs. Shelton engaged Champion Foundation Repair to review FTE's report and provide an estimate for implementing the repair protocol set forth therein. Champion's report estimated the cost for the subsurface repairs in the range of $81,345.00 - $97,320.00.

The record reflects that Mr. and Mrs. Shelton engaged the services of Rick J. Wilson and Assoc., Inc. to prepare a repair estimate for cosmetic damages. Wilson concluded that the above-ground repairs would cost $31,680.24.

Mr. and Mrs. Shelton argue that the record is undisputed that Liberty Mutual breached the subject policy by failing to reimburse them for the damage to the subject property caused by sinkhole activity, a covered loss. Mr. and Mrs. Shelton seek damages in the amount of $113,025.24.[1]

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled

---

[1] Mr. and Mrs. Shelton used the lowest estimate from Champion, $81,345.00, for subsurface remediation and Wilson's estimate of $31,680.24, for cosmetic damage, to arrive at a total figure of $113,025.24.

to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a

conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

As an initial matter, the Court adopts its earlier ruling that the subject policy term "structural damage" has a plain meaning of "damage to the structure" (Dkt. 23). Under that guidance, the salient issue is whether sinkhole activity caused the damage to the structure of the subject property. As set forth above, Mr. and Mrs. Shelton offer expert evidence that "damage to the subject Shelton Residence is caused by the sinkhole activity." Liberty Mutual does not provide any material conflicting evidence on this point. To the contrary, Liberty Mutual's expert, SDII, also observed damage to the structure of the subject property.

Liberty Mutual quibbles with Mr. and Mrs. Shelton's expert evidence but Liberty Mutual does not point to any evidence establishing that the loss to the subject property was excluded under the subject policy. The record reflects that Liberty Mutual's expert did not eliminate sinkhole activity as a cause of damage to the structure. Essentially, Liberty Mutual placed all of its eggs in one basket; Liberty Mutual limited its expert evidence in this case to an analysis and investigation of the existence of structural damage as the term structural damage is defined under Fla. Stat. § 627.706 (2011). This is curious given the Court's April 17, 2013 ruling that the definition of structural damage set forth in section 627.706 does not apply to the subject policy (Dkt. 23).

In sum, the issue of Liberty Mutual's breach of the subject policy is undisputed in the record. The next issue relates to the amount of damages. As Mr. and Mrs. Shelton point out,

the record is also undisputed on this issue. Liberty Mutual does not point to any record evidence establishing a different estimate of the damages to the subject property. Accordingly, Mr. and Mrs. Shelton are entitled to damages in the amount of $113,025.24.

The Court notes that Liberty Mutual appears to concede the entry of summary judgment in Plaintiffs' favor. Liberty Mutual's response concludes by stating that if the Court maintains its ruling that the interpretation of the policy term "structural damage" is satisfied by showing any "damage to the structure":

> Liberty Mutual will admit the following material facts solely for the purposes of Plaintiffs' motion for summary judgment and in order to obtain expedited appellate review of the Court's interpretation of the policy:
> (1) the insured building exhibits minor physical (cosmetic) damage.
> (2) the minor physical (cosmetic) damage exhibited by insured building was caused by sinkhole activity.
> (3) the total amount Plaintiffs may claim under the policy for damages for the cost to repair the minor physical (cosmetic) damage exhibited by insured dwelling caused by sinkhole activity and the cost for work to remediate subsurface conditions is $129,000.24.

(Dkt. 37 at P. 16/18).

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Summary Judgment (Dkt. 26) is granted.

2. The Clerk of Court is directed to enter a final judgment in the amount of **$113,025.24** in Plaintiffs' favor and against Defendant.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

4. The Court reserves jurisdiction on the issue of an award of attorney's fees and costs. If Plaintiffs choose to file a motion for attorney's fees and costs, said motion shall be filed within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on November 21, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-2064.msj26.wpd